IN THE MATTER OF: THE WILL OF HOMER CLIFTON GARDNER

No. 8526SC384

(Filed 18 February 1986)

**1. Wills § 21.4— caveat—undue influence—insufficiency of evidence**

The trial court in a caveat proceeding did not err in refusing to submit to the jury an issue as to undue influence where the evidence tended to show

In re Will of Gardner

that the testator left his entire estate to his wife of twenty years who looked after his needs and comfort during many years of declining health; testator's failing health caused him to be suspicious and quarrelsome rather than pliable and submissive; no prior will was revoked; testator's 1962 will in favor of caveators, his children by his first marriage, was revoked by law when he married propounder the next year; the final disposition which testator made of his property was completely natural; though testator lived with his wife, he was not under her constant control or supervision; the caveators and other relatives had unrestricted access to him, telephoning and visiting him whenever they saw fit; and the testator, rather than his wife, arranged for the execution of the will.

**2. Wills § 22— caveat—evidence of mental capacity—inventory of assets improperly excluded**

In a caveat proceeding where testamentary capacity was strongly contested, the trial court erred in refusing to receive into evidence an inventory of testator's assets made by his court-appointed guardian a few months after the will was executed which showed that testator had savings of nearly $100,000, since testator told the drafter of the will, at the time it was drawn, that his savings amounted to about $50,000, and such evidence tended to indicate that testator did not know the extent and value of his property, one of the cardinal requisites of testamentary capacity.

APPEAL by caveators from *Snepp, Judge.* Judgment entered 8 November 1984 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 24 October 1985.

The testator died in Charlotte on 5 February 1983 at age 81, survived by his wife of twenty years, Ellie Gardner, and three adult children by his first wife, who died in 1962. The will, executed on 24 January 1980, left his entire estate to his wife. Seven weeks after executing the will he had a stroke; two weeks later a proceeding to declare him mentally incompetent was initiated; and on 9 April 1980, following a jury trial, he was so adjudged and a guardian was appointed. After the stroke Mr. Gardner required institutional care and stayed in a hospital or nursing home until he died. The propounders are Thomas G. Ginn, the executor, and Mrs. Gardner; the caveators are decedent's three children, who alleged that he lacked testamentary capacity and was unduly influenced. At trial the court directed a verdict against the caveators on the undue influence issue, and the jury answered the testamentary capacity issue in favor of the propounders.

In pertinent part, the testimony of testator's children and other relatives, all of whom lived in the county, was to the follow-

ing effect: Before the will was executed the testator and Mrs. Gardner lived alone in their home and Mrs. Gardner did the housework and attended to his needs to the extent necessary. During his last years Mr. Gardner's failing health made him depend on Mrs. Gardner for the daily management of his personal and financial affairs; he had severe diabetes, his vision was poor, and he trembled badly. During that period their relationship was mistrustful and quarrelsome; he feared that she wanted to get rid of him or kill him for his money and complained that she controlled his personal affairs more than necessary; she feared that he would predecease her and leave none of his property to her; they had many heated arguments, and on one occasion Mrs. Gardner said she would take all of his money and put him out on the street. During the year before the will was executed, as his health continued to decline, he had many sudden mood changes, often was forgetful, sometimes did not recognize his children, occasionally said inappropriate things, was less active, and required more rest. At all times during the marriage the children visited Mr. Gardner and telephoned him whenever they wanted to, and some did so often. Mrs. Gardner was never friendly toward the children, did not encourage their visits and once told Donald Gardner, the testator's son, to leave the house, but whether he left or not the evidence does not show.

A public health nurse, who visited the Gardner home weekly during the testator's latter years, testified that he occasionally argued with his wife, occasionally forgot to take his medication, and often worried about his declining health and becoming dependent on others. Patrick Hunter, the lawyer who drafted the will, testified: He visited the Gardner home on 17 January 1980 to obtain information necessary to draft the will; Mrs. Gardner though at home was not in the room when he and Gardner discussed the will; Gardner told him how he wanted his property to go and said: "[Ellie Gardner] earned everything she's got coming just by living with me. John D. Rockefeller wouldn't have had enough money to make up for living with me." Mr. Hunter's testimony also indicated that Mr. Gardner knew what he was doing, knew the nature and extent of his property, and was under no apparent influence from his wife.

*Leonard, Shannonhouse, McNeely, MacMillan & Durham, by Thomas J. Hefferon, and Haynes, Baucom, Chandler, Claytor & Benton, by Rex C. Morgan, for caveator appellants.*

*Sanders & London, by Alvin A. London, for propounder appellees.*

PHILLIPS, Judge.

[1]  The caveators' first contention, that the trial judge erred in refusing to submit the undue influence issue to the jury, has no merit and we overrule it. The evidence stated above, when viewed in the light most favorable to the caveators, tends to show only that Mr. Gardner's health was failing and that Mrs. Gardner had the opportunity to influence him in the making of his will. It does not tend to show that she ever influenced him, unduly or otherwise, or that she was capable of substituting her will for his, which is the essence of undue influence. *In re Will of Harris,* 218 N.C. 459, 461, 11 S.E. 2d 310, 310-11 (1940). According to the evidence the testator's failing health caused him to be suspicious and quarrelsome, rather than pliable and submissive. No prior will was revoked; his 1962 will in favor of the children was revoked by the law when he married Mrs. Gardner the next year. The final disposition that Mr. Gardner made of his property — to the wife that had looked after his needs and comfort during many years of declining health — was completely natural. Though the testator lived with Mrs. Gardner, he was not under her constant control or supervision; the caveators and other relatives had unrestricted access to him, telephoning and visiting him whenever they saw fit. And the testator, rather than Mrs. Gardner, arranged for the execution of the will and for aught that the record shows she played no part in it. Thus, the evidence failed to raise the undue influence issue and the court correctly directed verdict thereon. The cases of *In re Will of Andrews,* 299 N.C. 52, 261 S.E. 2d 198 (1980) and *In re Will of Beale,* 202 N.C. 618, 163 S.E. 684 (1932), which caveators rely upon, involved factual situations quite unlike the one here.

[2]  But the caveators' other contention, that the court erred to their prejudice by refusing to receive certain evidence bearing on the testamentary capacity issue, is well taken. The evidence that the court refused to receive was an inventory of Mr. Gardner's

assets made by his court-appointed guardian a few months after the will was executed. According to the inventory, Mr. Gardner had savings amounting to nearly $100,000; whereas, when the will was drafted he told the drafter, according to the latter's testimony, that his savings amounted to about $50,000. This evidence should have been received. It tends to indicate that Mr. Gardner did not know the extent and value of his property, one of the cardinal requisites of testamentary capacity under our law. *In re Will of Shute*, 251 N.C. 697, 111 S.E. 2d 851 (1960). Since the testamentary capacity issue was so strongly contested the rejection of this evidence could have deprived the caveators of a verdict and a new trial is required.

New trial.

Judges WEBB and JOHNSON concur.